IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| PRISM TECHNOLOGIES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | 8:12CV122 |
| | ) | |
| v. | ) | |
| | ) | |
| AT&T MOBILITY, LLC, | ) | MEMORANDUM AND ORDER |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| PRISM TECHNOLOGIES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | 8:12CV123 |
| | ) | |
| v. | ) | |
| | ) | |
| SPRINT SPECTRUM L.P., | ) | |
| d/b/a SPRINT PCS, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| PRISM TECHNOLOGIES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | 8:12CV124 |
| | ) | |
| v. | ) | |
| | ) | |
| T-MOBILE USA, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| PRISM TECHNOLOGIES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | 8:12CV125 |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES CELLULAR | ) | |
| CORPORATION, d/b/a U.S. | ) | |
| CELLULAR, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

```
PRISM TECHNOLOGIES LLC,          )
                                 )
              Plaintiff,         )              8:12CV126
                                 )
         v.                      )
                                 )
CELLCO PARTNERSHIP d/b/a         )
VERIZON WIRELESS,                )
                                 )
              Defendant.         )
_____)
```

Before the Court are motions for partial summary judgment filed pursuant to Federal Rule of Civil Procedure 56 by plaintiff Prism Technologies LLC ("Prism") as to defendants AT&T Mobility LLC (Filing No. 77 in 8:12CV122), Sprint Spectrum L.P. (Filing No. 75 in 8:12CV123), T-Mobile USA, Inc. (Filing No. 77 in 8:12CV124), United States Cellular Corporation (Filing No. 74 in 8:12CV125), and Cellco Partnership d/b/a Verizon Wireless (Filing No. 79 in 8:12CV126). Prism filed a brief and index of evidence with each motion.

Also before the Court are defendants' cross-motions for summary judgment filed pursuant to Federal Rule of Civil Procedure 56, as follows: AT&T Mobility LLC (Filing No. 87 in 8:12CV122), Sprint Spectrum L.P. (Filing No. 86 in 8:12CV123), T-Mobile USA, Inc. (Filing No. 88 in 8:12CV124), United States Cellular Corporation (Filing No. 84 in 8:12CV125), and Cellco Partnership d/b/a Verizon Wireless (Filing No. 87 in 8:12CV126). Each defendant filed a collaborative brief with index of evidence

in support of its cross-motion and in opposition to Prism's motion.[1]

Prism filed a reply brief in support of its motion in each case, and each defendant filed a collaborative reply/ surreply brief in support of its motion and in opposition to Prism's motion, with index of evidence. After review of the motions, briefs, submitted evidence, and relevant law, the Court makes the following rulings.

**I. Factual Background.**

Prism alleges infringement of three patents, U.S. Patent No. 7,290,288 ("'288 patent"), U.S. Patent No. 8,127,345 ("'345 patent"), and U.S. Patent No. 8,387,155 ("'155 patent") (collectively, the "asserted patents," or "patents-in-suit"), by defendants. At issue is the priority date for the asserted patents.

**A. The '288 Patent.** The '288 patent issued on October 30, 2007, from an application filed August 29, 2002,[2] with the United States Patent and Trademark Office ("USPTO") (Ex. 1,

---

[1] For ease of citation, the Court will cite to the filings in the AT&T Mobility LLC case only (8:12CV122). Defendant T-Mobile USA, Inc., did not join in one of the arguments made by the other defendants ("Co-Pendency;" *see* section III.A.4 below). Otherwise, defendants state that their briefs are "substantively identical" (Filing No. 88, at 39 n.7).

[2] The application for each issued patent will be referred to, for example, as "the '288 patent application," rather than by the patent application number.

Filing No. 85).  Prism contends that the '288 patent is a
continuation-in-part of another Prism patent, U.S. Patent No.
6,516,416 ("'416 patent"), which issued on February 4, 2003, from
an application filed June 11, 1997 (*See* Ex. 5, Filing No. 79;
Filing No. 82, at 6).  Prism maintains that the claims of the
'288 patent should enjoy the earlier priority date of the '416
patent, June 11, 1997.  The '416 patent is not asserted in this
suit.

   As part of the '288 patent application, a Declaration
and Power of Attorney form dated August 29, 2002, was filed with
the USPTO ("2002 Declaration and Power of Attorney"), signed by
inventor Richard L. Gregg, "claim[ing] the benefit under Title
35, United States Code, § 120" of the then pending '416 patent
application (Ex. 2, Filing No. 79, at 4).  The USPTO sent a
receipt for the '288 patent application to Mr. Gregg's counsel
dated October 4, 2002 ("2002 Filing Receipt") (*Id.* at 7).  The
receipt's space for "Domestic Priority data as claimed by
applicant" was blank.  On October 30, 2002, Mr. Gregg's counsel
sent a letter to the USPTO requesting a corrected filing receipt
("2002 Filing Receipt Letter"), stating, "The Patent and
Trademark Office neglected to include the domestic priority
claimed based on the U.S. Patent Application Serial No.
08/872,710 as indicated by the Declaration filed on August 29,
2002" (*Id.* at 6).  "Underneath the title Domestic Priority Data

-4-

as Claimed by Applicant, please indicate that this application is a Continuation-In-Part Application of the U.S. Patent Application Serial No. 08/872,710 filed on June 11, 1997" (*Id.*).

On March 6, 2003, the USPTO published the '288 patent application ("2003 Patent Application Publication") with title page language as follows:  "**Related U.S. Application Data** Continuation-in-part of application No. 08/872,710, filed on Jun. 11, 1997," which is the '416 patent application (Ex. 8, Filing No. 79, at 2).

A USPTO "Bib Data Sheet" apparently downloaded on July 22, 2004 ("2004 Bib Data Sheet"), reads in part, "**CONTINUING DATA************************  This application is a CIP of 08/872,710 06/11/1997 PAT 6,516,416," which statement appears to be hand-initialed by a USPTO examiner, Andrew Nalven (Ex. 2, Filing No. 79, at 10, 11).[3]

On March 3, 2006, Mr. Gregg submitted a Substitute Declaration and Power of Attorney form to the USPTO, changing legal counsel (*Id.* at 13).  As in the August 29, 2002, Declaration and Power of Attorney, Mr. Gregg "claim[ed] the benefit under 35 U.S.C. § 120" of the '416 patent application and, by that time, the issued '416 patent (*Id.*).  The USPTO sent a corrected filing receipt for the '288 patent application to Mr.

---

[3] Two later Bib Data Sheets contained no information in the "Continuing Data" section (Ex. 2, Filing No. 79, at 30, 34).

Gregg's counsel dated June 1, 2007 (*Id.* at 31).  Again, the receipt's space for "Domestic Priority data as claimed by applicant" was blank.

When the '288 patent issued on October 30, 2007, it contained no reference to the '416 patent application on the title page or in the first paragraph following the title of the specification.  On November 21, 2007, Mr. Gregg's counsel sent a Request for Certificate of Correction for the '288 patent ("2007 Request for Certificate of Correction") to the USPTO "[p]ursuant to 35 U.S.C. § 254 and 255" (*Id.* at 37).  The request would correct typographical errors due to the error of the applicant but also contained the following language:  "Title Page 1: Insert the following: —**Related U.S. Application Data** Continuation-in-part of application No. 08/872,710, filed on Jun. 11, 1997, now U.S. Patent No. 6,516,416.–" (*Id.* at 41).  The cover letter stated that this mistake "occurred through the fault of the Patent Office, as clearly disclosed by the records of the application which matured into this patent" (*Id.* at 37).

On August 3, 2009, the USPTO granted a request for reexamination of the '288 patent by a third party ("First Reexamination"), where the USPTO stated,

> A request was filed by the Patent
> Holder for a Certificate of
> Correction to identify the
> application as a continuation-
> in-part of U.S. Patent Application
> No. 08/872,710, now U.S. Patent No.

-6-

> 6,516,416, filed on 11 June 1997.
> Since a Certificate of Correction
> addressing this issue has not been
> issued by the Office as of the time
> of the writing of this Order, it is
> being presumed that the '288 patent
> does not enjoy the benefit of this
> earlier filing date . . .

(Ex. 3, Filing No. 79, at 46).

On September 8, 2009, the USPTO issued a Certificate of Correction containing the requested language, ""<u>Title Page 1: Item (60)</u>, Insert the following: —**Related U.S. Application Data** Continuation-in-part of application No. 08/872,710, filed on Jun. 11, 1997, now U.S. Patent No, 6,516,416.—" ("2009 Certificate of Correction," Ex. 2, Filing No. 85).

Then, in connection with the ongoing First Reexamination, on March 2, 2010, the USPTO issued an Office Action ("March 2010 Office Action") where Examiner Matthew Heneghan stated,

> A Certificate of Correction was
> mailed by the Office on 8 September
> 2009.  One of the corrections in
> the patent was a statement that the
> patent had been filed as a
> "Continuation-in-part of
> application No. 08/872,710, filed
> on Jun. 11, 1997, now U.S. Patent
> No. 6,516,416."  This new citation
> on the patent's title page,
> however, is inconsistent with the
> remainder of the patent
> publication, in that a reference to
> the prior application has not been
> inserted as the first sentence of
> the specification of this
> application or in an application

-7-

> data sheet (37 CFR 1.76), which is required if applicant intends to rely on the filing date of the prior application . . . .
>
> In order to correct the priority claim, the Patent Owner is required to submit the reference in compliance with 37 CFR 1.78(a) by filing an amendment to the first sentence(s) of the specification or an ADS.  See MPEP § 201.11.
>
> For purposes of this office action, it is being presumed that the '288 does NOT enjoy priority to Application No. 08/872,710 [the '416 patent].

(Ex. 3, Filing No. 79, at 36-37).  In response, on April 2, 2010, Mr. Gregg's counsel requested an amendment to the First Reexamination application of the '288 patent:  "**Amendments to the Specification:**  Please add the following new paragraph before paragraph 1 on page 1:  This application is a continuation-in-part of Application No. 08/872,710, filed on June 11, 1997, now U.S. Patent No. 6,516,416" (*Id.* at 27, 28).  Mr. Gregg's counsel did not concede that this amendment was necessary for the claim of priority, which he maintained was already "established to the [USPTO's] satisfaction" during prosecution of the '288 patent application (*Id.* at 30-31).

On April 30, 2010, still in connection with the ongoing First Reexamination, the USPTO issued a Notice of Intent to Issue Ex Parte Reexamination Certificate ("April 2010 Notice of Intent") where Examiner Heneghan stated, "The statement regarding

-8-

priority in the prior office action [March 2010 Office Action] appears inapt.  As a legally valid certificate of correction appears of record in underlying patent 7,290,288 the patent is deemed to enjoy the claimed priority as an operation of law" (*Id.* at 25).

Meanwhile, on July 2, 2010, the USPTO granted a second request for reexamination of the '288 patent ("Second Reexamination") by the same third party, which request contained a "Detailed Analysis of Prism's Claim to Earlier Filing Date" (Ex. 4, Filing No. 79, at 5-10).  In its order granting the request ("July 2010 Order"), Examiner Heneghan stated,

> The Requester has questioned the priority to U.S. Patent No. 6,516,416 (hereinafter "the '416 patent").  As a legally valid certificate of correction appears of record in underlying patent 7,290,288 the patent is deemed to enjoy the claimed priority as a continuation-in-part as an operation of law.  For any claims that a reasonable examiner would find to be clearly supported by the '416 patent, the effective filing date is being treated as 11 June 1997. . . .
>
> For purposes of this Order, all the claims of the '288 patent are therefore being treated as having an effective U.S. filing date of 11 June 1997 . . .

(*Id.* at 17, 18-19).

On August 3, 2010, the USPTO issued an Ex Parte Reexamination Certificate for the First Reexamination that confirmed the patentability of some of the patent claims of the '288 patent and also stated with regard to the specification: "THE PATENT IS HEREBY AMENDED AS INDICATED BELOW. . . . Column 1, line 7: *This application is a continuation-in-part of Application No. 08/872,710, filed on Jun. 11, 1997, now U.S. Pat. No. 6,516,416*" ("First Reexamination Certificate," Ex. 3, Filing No. 85, at 20). The First Reexamination Certificate also bore the "**Related U.S. Application Data** Continuation-in-part of application No. 08/872,710, filed on Jun. 11, 1997, now U.S. Patent No, 6,516,416" language on the title page as added by the 2009 Certificate of Correction.

On June 7, 2011, the USPTO issued an Ex Parte Reexamination Certificate for the Second Reexamination that confirmed the patentability of additional patent claims of the '288 patent ("Second Reexamination Certificate," Ex. 4, Filing No. 85), whose title page reads in part: "**Related U.S. Application Data** Continuation-in-part of application No. 08/872,710, filed on Jun. 11, 1997, now Pat. No. 6,516,416," again reflecting the changes ordained by the 2009 Certificate of Correction (*Id.*).[4]

---

[4] On August 23, 2011, the USPTO issued a second Certificate of Correction for the '288 patent that does not bear on the priority date issue (Ex. 5, Filing No. 85).

-10-

**B. The '345 Patent.** The '345 patent issued on February 28, 2012, from an application filed October 30, 2007, with the USPTO (Ex. 6, Filing No. 85). The title page of the '345 patent reads, "**Related U.S. Application Data** Continuation of application No. 10/230,638, filed on Aug. 29, 2002, now Pat. No. 7,290,288, which is a continuation-in-part of application No. 08/872,710, filed on Jun. 11, 1997, now Pat. No. 6,516,416" (*Id.* at 1). The first paragraph of the specification following the title of the '345 patent bears a similar reference ('345 patent, 1:6-10).

**C. The '155 Patent.** The '155 patent issued on February 26, 2013, from an application filed November 11, 2010, with the USPTO (Ex. 7, Filing No. 85). The title page of the '155 patent reads,

> **Related U.S. Application Data**
> Continuation of application No.
> 11/978,919, filed on Oct. 30, 2007,
> now Pat. No. 8,127,345, which is a
> continuation of application No.
> 10/230,638, filed on Aug. 29, 2002,
> now Pat. No. 7,290,288, which is a
> continuation-in-part of application
> No. 08/872,710, filed on Jun. 11,
> 1997, now Pat. No. 6,516,416.

(*Id.* at 1). The first paragraph of the specification following the title of the '155 patent bears a similar reference ('155 patent, 1:4-10).

-11-

## II.  Standard of Review.

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 321-23 (1986).  "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

"Determination of a priority date is purely a question of law if the facts underlying that determination are undisputed."  *Bradford Co. v. Conteyor N. Am., Inc.*, 603 F.3d 1262, 1268 (Fed. Cir. 2010) (citing *E.I. du Pont de Nemours & Co. v. MacDermid Printing Solutions*, *L.L.C.*, 525 F.3d 1353, 1359 (Fed. Cir. 2008)).  "However, determination whether a priority document contains sufficient disclosure to comply with the written description aspect of 35 U.S.C. § 112, first paragraph, is a question of fact."  *Bradford*, 603 F.3d at 1268.

"Congress has delegated to the PTO the rulemaking power to 'establish regulations, not inconsistent with the law, which

-12-

. . . shall govern the conduct of proceedings in the Office." *In re Lovin*, 652 F.3d 1349, 1353 (Fed. Cir. 2011) (quoting 35 U.S.C. § 2(b)(2) (2000)). "It is well-established that deference is owed to decisions of the PTO in interpreting these regulations." *In re Lovin*, 652 F.3d at 1353. "We have repeatedly held that '[a]n agency's interpretation of its own regulations is entitled to substantial deference and will be accepted unless it is plainly erroneous or inconsistent with the regulation.'" *In re Garner*, 508 F.3d 1376, 1378 (Fed. Cir. 2007) (quoting *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1282 (Fed. Cir. 2005)). "Regularity of routine administrative procedures is presumed, and departure therefrom, should such have occurred, is not grounds of collateral attack. Courts should not readily intervene in the day-to-day operations of an administrative agency, especially when the agency practice is in straightforward implementation of the statute." *Hyatt v. Boone*, 146 F.3d 1348, 1355-56 (Fed. Cir. 1998).

**III. Motions for Summary Judgment.**

In order for the asserted patents to enjoy the priority date of the '416 patent, they would have to comply with the requirements set out in 35 U.S.C. § 120:

> An application for patent for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States, or as provided by

-13-

section 363 of this title, which is
filed by an inventor or inventors
named in the previously filed
application shall have the same
effect, as to such invention, as
though filed on the date of the
prior application, if filed before
the patenting or abandonment of or
termination of proceedings on the
first application or on an
application similarly entitled to
the benefit of the filing date of
the first application and if it
contains or is amended to contain a
specific reference to the earlier
filed application.  No application
shall be entitled to the benefit of
an earlier filed application under
this section unless an amendment
containing the specific reference
to the earlier filed application is
submitted at such time during the
pendency of the application as
required by the Director.

35 U.S.C § 120 (2000).  As the Second Circuit has described it,

Although § 120 might appear to be a
technical provision, it embodies an
important public policy.  The
information required to be
disclosed is information that would
enable a person searching the
records of the Patent Office to
determine with a minimum of effort
the exact filing date upon which a
patent applicant is relying to
support the validity of his
application or the validity of a
patent issued on the basis of one
of a series of applications.

*Sampson v. Ampex Corp.*, 463 F.2d 1042, 1045 (2d Cir. 1972).

**A.  Prism's Motions.**  Prism moves the Court to
"confirm[] the June 11, 1997 priority date" for the '288 patent

-14-

and the '345 patent and, by extension, the '155 patent, issued after the date of Prism's motions but discussed in all parties' briefs postdating its issuance (Filing No. 77, at 2).  Prism claims that it "properly claimed the benefit of its June 11, 1997 priority date during prosecution of the asserted patents and complied with the statutory requirements under 35 U.S.C. § 120" (*Id.*).

Defendants assert that Prism did not comply with appropriate patent law such that "the '288 Patent is not entitled to claim priority to the earlier-filed '416 Patent, and the '345 Patent and '155 Patent, the other two patents-in-suit, are not entitled to claim priority back through the '288 Patent to the '416 Patent either" (Filing No. 87, at 2).  Defendants object to Prism's motion for three reasons.  First, defendants question whether the invention disclosed by the claims of each of Prism's asserted patents was also disclosed by the '416 patent.  Second, defendants question whether Prism included an appropriate specific reference to the '416 patent application in the '288 patent application.  Third, defendants[5] question whether the '345 patent application, filed on October 30, 2007, was "filed before the patenting" of the '288 patent, which also issued on October 30, 2007.

---

[5] T-Mobile USA, Inc., does not join in this argument.

-15-

      **1.   Adequacy of Disclosure - 35 U.S.C. § 112.**  As cited in § 120, the Patent Act requires,

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same . . . .

35 U.S.C. § 112.  "It is elementary patent law that a patent application is entitled to the benefit of the filing date of an earlier filed application only if the disclosure of the earlier application provides support for the claims of the later application, as required by 35 U.S.C. § 112."  *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1306 (Fed. Cir. 2008) (quotation omitted).  "'[T]o gain the benefit of the filing date of an earlier application under 35 U.S.C. § 120, each application in the chain leading back to the earlier application must comply with the written description requirement of 35 U.S.C. § 112.'"  *Hollmer v. Harari*, 681 F.3d 1351, 1355 (Fed. Cir. 2012), *cert. denied*, 133 S. Ct. 989 (U.S. 2013) (quoting *Zenon Envtl., Inc. v. U.S. Filter Corp.*, 506 F.3d 1370, 1378 (Fed. Cir. 2007)).

      "'[T]he test for sufficiency of support in a parent application is whether the disclosure of the application relied upon 'reasonably conveys to the artisan that the inventor had possession at that time of the later claimed subject matter.'"

-16-

*Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1369 (Fed. Cir. 2009) (quoting *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 772 F.2d 1570, 1575 (Fed. Cir. 1985)).  "There would be no reason for the PTO to undertake what could be a very time consuming written description analysis simply to pronounce the effective filing date of each claim, absent some dispute over it during prosecution."  *PowerOasis*, 522 F.3d at 1305 n.4.

        In its briefs, Prism does not substantively address the adequacy of disclosure of each claim of the asserted patents, even though it specifically asks the Court for summary judgment stating that the priority dates of the asserted patents are the same as that of the '416 patent.  Prism claims, "Defendant does not dispute that Prism complied with [the requirement that] the inventions in the applications were disclosed in the original application pursuant to 35 U.S.C. § 112 . . ." (Filing No. 99, at 11).

        On the contrary, defendants state that they "do not concede . . . the sufficiency of the disclosure in the original '416 Patent pursuant to 35 U.S.C. § 112" (Filing No. 88, at 48). "To the extent that the Court is inclined to grant Prism's motion, the only appropriate relief at this time is that the patents-in-suit properly claimed priority to the '416 Patent, not that the patents-in-suit are entitled to a priority date of June 11, 1997" (*Id.*).  The Court agrees with defendants that the issue

-17-

of the adequacy of disclosure of the claims of the asserted patents by the '416 patent application pursuant to 35 U.S.C. §§ 112 and 120 is a question of fact that has not been briefed and is not now properly before the Court.  Accordingly, the Court reserves ruling on this issue.

> ## 2.  **Specific Reference to the '416 Patent Application by the '288 Patent Application.**  "The [USPTO] has promulgated regulations to specify the procedures for claiming priority under § 120.  *See* 37 C.F.R. § 1.78(a)(2)(i) (1997) (requiring specific reference in the first sentence of the specification)."  *Broad. Innovation, L.L.C. v. Charter Commc'ns, Inc.*, 420 F.3d 1364, 1367 (Fed. Cir. 2005).  "In an extraordinary situation, when justice requires, any requirement of the regulations in this part which is not a requirement of the statutes may be suspended or waived by the Director or the Director's designee, sua sponte, or on petition of the interested party, subject to such other requirements as may be imposed."  37 C.F.R. § 1.183 ("Rule 183").

The dispute between the parties centers around the relevance of varying levels of patent statutes, rules, and regulations.  First, both parties agree that Prism must have complied with the appropriate statute, 35 U.S.C. § 120, in order for the '288 patent application to properly claim priority to the '416 patent application.  The parties' views diverge, however, regarding the applicability of the USPTO's regulations,

specifically 37 C.F.R. § 1.78 ("Rule 78") and the Manual of
Patent Examining Procedure ("MPEP") § 201.11.  Prism concedes
that it did not comply with Rule 78's requirement that a
"specific reference" in the context of § 120 be made in an
Application Data Sheet ("ADS") or in the first sentence of the
specification (Filing No. 99, at 18 n.5).  But Prism maintains
that because it complied with the statutory requirements of
§ 120, and because its compliance fulfilled the public notice
purpose of the statute, its technical noncompliance with the
regulation is of no import and, in any event, can be waived by
the Director of the USPTO pursuant to Rule 183.

        Prism states, "During the prosecution of the
application that led to the '288 Patent, Prism satisfied the
statutory notice requirement of 35 U.S.C. § 120 by providing the
USPTO with two specific references to the [priority date of the
'416 patent], which the USPTO recognized and accepted" (Filing
No. 82, at 20).  Prism first notes Mr. Gregg's specific reference
to the '416 patent priority date in the 2002 Declaration and
Power of Attorney.  Second, Prism notes the reference to the '416
patent application filing date in the 2002 Filing Receipt Letter.

        Prism claims that the USPTO included the requested '416
patent application filing date information on the 2003 Patent
Application Publication as a result of the two specific
references.  "Publication of the application for the '288 Patent

-19-

with the ['416 patent application filing date] on its face makes
clear that [Prism] not only made specific references to the
earlier filed application, but also made a specific reference 'as
required by the Director' in compliance with 35 U.S.C. § 120"
(*Id.* at 21 (footnote omitted)).  Furthermore, Prism points to the
2004 Bib Data Sheet, with the '416 patent application filing date
hand-initialed by the examiner, as evidence that the filing date
was correct and that the USPTO accepted Mr. Gregg's claim of
priority to the '416 patent application.

        In support of its motion, Prism submitted a declaration
by John J. Doll (Ex. 9, Filing No. 79 ("Doll Declaration")).  Mr.
Doll worked for the USPTO for over thirty-five years, starting as
a patent examiner.  He was given numerous promotions and added
responsibilities until he retired as the Commissioner for Patents
(and, for an eight-month period, the Acting Under Secretary of
Commerce and the Acting Director of the USPTO).  Mr. Doll states,
"As a former USPTO Examiner who examined or was responsible for
the examination of thousands of applications and as the
Commissioner for Patents and Acting Director of the USPTO, I am
familiar with the policies and procedures of the USPTO for
recognizing priority claims, which I further describe below"
(Doll Declaration, at ¶ 34).  While defendants do not challenge
Mr. Doll's statements about the patent application process, they
object to what they characterize as his "ultimate legal opinion,"

-20-

which they claim should be disregarded by the Court (Filing No.
106, at 13 n.4).  The Court will consider Mr. Doll's statements
as to USPTO policies and procedures but will form its own legal
opinion.

Mr. Doll states, "It is my understanding and experience
that a specific reference claiming priority to an earlier-filed
application contained in an Oath or Declaration can be used to
satisfy [Rule 78]" (Doll Declaration, ¶ 47).

> [I]t is my understanding that if
> the specific reference to an
> earlier filed application is not
> contained in an ADS, but instead is
> included in an Oath or Declaration
> and is recognized by the USPTO as
> evidenced by, for example,
> publication of the application with
> the priority claim on the face of
> the publication, then in all
> practicality, no amendment of the
> specification restating the
> priority claim is needed.  This is
> because as Section 201.11 of the
> MPEP explains, the purpose of
> providing information in an ADS is
> to provide information to be input
> to the PALM [Patent Application
> Locating and Monitoring] system,
> from which publication information
> is obtained.  37 C.F.R.
> § 1.76(d)(4).  If the same
> information is inputted into PALM
> based on an Oath or Declaration,
> then the purpose of notifying the
> public of applicants' priority date
> claim has been satisfied.
>
> I am aware of MPEP § 201.11,
> Section III.D which addresses the
> situation where a specific
> reference for a priority claim is

-21-

timely submitted in an Oath or
Declaration, but not in an ADS or
in the first sentence of the
specification, and which states
that there is not a proper benefit
claim unless an ADS is submitted or
in the first sentence of the
specification.

In my experience as an Examiner and
as the Commissioner and Acting
Director, the USPTO recognizes and
upholds decisions by examiners in
situations where technical
compliance with a particular rule
or guideline is not observed.  Such
situations include decisions by the
examiner where facts and
circumstances presented to the
examiner indicate the decision by
the examiner was otherwise
appropriate.  For example as in
this case, an examiner may
recognize a claim for priority
where the applicants do not use an
ADS or state the priority claim in
the first sentence of the
specification but use[], for
example, an Oath or Declaration.
This flexibility and rule of reason
approach is appropriate to ensure
the efficient operation of the
USPTO in light of its extraordinary
workload and numerous statutory and
regulatory rules that apply to the
patent application process. . .

(*Id.* at ¶¶ 49-51).

        Defendants strongly disagree.  Defendants claim,

"Prism's contention that a Declaration and Power of Attorney

filed by one of the named inventors, which accompanied the filing

of Prism's application, is a 'specific reference' ignores the

law" (Filing No. 88, at 22).  "Rule 78 requires that the

'specific reference' be made in a particular way — *i.e.*, the specific reference must be included in an ADS or the first sentence of the specification" (*Id.*).  Defendants cite the Federal Circuit for the proposition that "the Commissioner's promulgation of regulations, which are found in 37 CFR, . . . if not inconsistent with law, or not suspended by the Commissioner under 37 CFR 1.183, have the force and effect of law."  *Wyden v. Comm'r of Patents & Trademarks*, 807 F.2d 934, 935-36 (Fed. Cir. 1986) (defendants omit the phrase "or not suspended by the Commissioner under 37 CFR 1.183").

In particular, defendants cite MPEP § 201.11 in force at the time of the '288 patent application, stating that it "made clear that the specific reference must be included in an ADS or in the first sentence of the specification to comply with Section 120 and Rule 78 regardless of whether it was entered in the PALM database . . . ." (Filing No. 88, at 24).  Defendants conclude, "Commissioner Doll's current interpretation is directly contrary to the PTO's regulations which have the force of law.  Accordingly, Commissioner Doll's declaration is entitled to no deference" (*Id.*).

Defendants also cite a case from the District of Utah, where a child patent application did reference the parent patent application, but the reference contained a misstatement of the relationship between the two applications.  *Simmons, Inc. v.*

-23-

*Bombardier, Inc.*, 328 F. Supp. 2d 1188, 1200 (D. Utah 2004).

"Therefore, the question is whether the misstated reference satisfies the specific reference requirement of 35 U.S.C. § 120." *Id*.  In that case,

> Simmons states that . . . the mistake is due to an error of the USPTO.  Regardless of where the error lies, Simmons was the party who was in a position to ensure that the face of the [child] patent accurately reflect the relationship between the applications.  Simmons states that it did not become aware of the mistake until two years after it was committed.  However, even a cursory inspection would have revealed the mistake to Simmons.  As the Federal Circuit has stated, "It does not seem to us to be asking too much to expect a patentee to check a patent when it is issued in order to determine whether it contains any errors that require the issuance of a certificate of correction."  Had Simmons immediately insisted on correction, this issue would not be before the court.

*Id*. at 1201 (quoting *Southwest Software, Inc. v. Harlequin, Inc*., 226 F.3d 1280, 1296 (Fed. Cir. 2000)).  The court found that the child patent application had not complied with the "specific reference" requirement of § 120.

Here, Prism's actions are distinguishable from the applicant in *Simmons*.  Prism immediately moved to correct what it saw as an error both when it sent the 2002 Filing Receipt Letter less than a month after receiving the 2002 Filing Receipt and

-24-

when it sent the 2007 Request for Certificate of Correction less than a month after the issuance of the '288 patent.  In both cases, Prism stated what it saw as the correct relationship between the '416 patent and the '288 patent.

Both parties cite *Carotek, Inc. v. Kobayashi Ventures, LLC*, 875 F. Supp. 2d 313 (S.D.N.Y. 2012) in support of their arguments.  In *Carotek*, a patent applicant failed to claim priority to an earlier grandparent patent as specifically required by Rule 78, although the applicant did include an inventors' declaration claiming priority.  The child patent issued without any reference to the grandparent patent.  Responding to the applicant Kobayashi's objections, the court stated,

> Kobayashi argues that the [child patent] Application did contain the requisite reference, inasmuch as the original inventors' declaration filed with it was identical to the inventors' declaration that had been filed with the [grandparent patent] Application (and the [parent patent] Application) and the second inventors' declaration affirmatively claimed the benefit of the [grandparent patent] Application and [grandparent] Patent.  These declarations, however, do not satisfy the "specific reference" requirement.  The language of the regulation is unequivocal:  to claim the benefit of an earlier patent, "the specification must contain or be amended to contain such reference

-25-

> in the first sentence(s) following
> the title."

*Carotek*, 875 F. Supp. 2d at 334 (quoting C.F.R.

§ 1.78(a)(2)(iii)) (footnote omitted).  Given these facts, the

court found the child patent did not enjoy the priority of the

grandparent patent on the basis of the child patent application

alone (but a later issued Certificate of Correction would allow

the claim of priority as of the date of the Certificate).

        Unlike this case, there is no indication in *Carotek*

that the Patent Application Publication for the child patent

issued with a reference to the grandparent patent on the title

page.  In fact, the *Carotek* court emphasized in the context of

the later certificate of correction to the child patent that "the

correction issued only to the patent itself, not the application,

and Kobayashi did not request a correction to the application."

*Carotek,* 875 F. Supp. 2d at 335.

        In contrast, Prism did request a correction during the

'288 application process in the 2002 Filing Receipt Letter.  Soon

thereafter, the USPTO issued the 2003 Patent Application

Publication containing the '416 patent application priority

reference.  To this point, Mr. Doll states,

> Once a specific reference for a
> priority claim has been recognized
> by the USPTO, such as by publishing
> an application with a copy of the
> priority claim on the face of the
> application or placing a copy of
> the BIBDATASHEET from the PALM

> system reflecting the priority
> claim in the file, applicants can
> expect the USPTO (1) to maintain
> the priority claim information in
> the PALM system, and (2) for the
> issued patent to include the
> priority claim on the face of the
> patent.  If the USPTO records are
> clear that the priority claim was
> previously recognized by the USPTO
> and the priority claim was not
> subsequently refused by the USPTO,
> then the priority claim should have
> been printed on the face of the
> patent.

(Doll Declaration, ¶ 53).

The Court recognizes that MPEP 201.11.III.D required that the specific reference be included in an ADS or in the first sentence of the specification even when the USPTO had "recognized a benefit claim by entering it into the Office's database and including it on applicant's filing receipt."  But in this case, the USPTO went one step further.  The USPTO published the specific reference on the title page of the 2003 Patent Application Publication itself, giving notice of the specific reference to the public.

There is no question but that Prism's procedure in claiming priority during the '288 patent prosecution was not ideal.  In addition, the '288 patent prosecution history is rife with inconsistencies, such as the two filing receipts and the two Bib Data Sheets that do not contain any priority data or continuing data information.  Yet the Court finds it hard to

imagine why Prism would move to amend its application after the issuance of the 2003 Patent Application Publication, which stated the exact priority Prism claimed (and after the issuance of the 2004 Bib Data Sheet hand-initialed by Examiner Nalven).  Despite Prism's unconventional procedure, the USPTO's actions would make it difficult for Prism to determine that something in the patent application was amiss, notwithstanding Rule 78 and MPEP 201.11, particularly since the Director has the authority to waive any requirements of the regulations when statutory requirements are met.  37 C.F.R. § 1.183.  Under the circumstances, the Court finds that Prism's '288 patent application complied with the "specific reference" requirement of 35 U.S.C. § 120.

   **3.  Significance of the 2009 Certificate of Correction and the Reexamination Certificates.**  The Patent Act contains two statutes addressing the issuance of a certificate of correction. The first, § 254, applies in the case of a mistake by the USPTO:

> Whenever a mistake in a patent,
> incurred through the fault of the
> Patent and Trademark Office, is
> clearly disclosed by the records of
> the Office, the Director may issue
> a certificate of correction . . . .
> A printed copy thereof shall be
> attached to each printed copy of
> the patent, and such certificate
> shall be considered as part of the
> original patent.  Every such
> patent, together with such
> certificate, shall have the same
> effect and operation in law on the
> trial of actions for causes
> thereafter arising as if the same

had been originally issued in such
corrected form.

35 U.S.C. § 254.   "[B]ecause there is a requirement that such
certificates issue only if the mistake is 'clearly disclosed by
the records of the [PTO],' the chance that competitors will be
harmed by any delay is minimal." *E.I. du Pont*, 525 F.3d at 1362
(quoting 35 U.S.C. § 254).

The second statute, § 255, applies in the case of a
mistake by the patent applicant:

> Whenever a mistake of a clerical or
> typographical nature, or of minor
> character, which was not the fault
> of the Patent and Trademark Office,
> appears in a patent and a showing
> has been made that such mistake
> occurred in good faith, the
> Director may, upon payment of the
> required fee, issue a certificate
> of correction, if the correction
> does not involve such changes in
> the patent as would constitute new
> matter or would require
> re-examination.  Such patent,
> together with the certificate,
> shall have the same effect and
> operation in law on the trial of
> actions for causes thereafter
> arising as if the same had been
> originally issued in such corrected
> form.

35 U.S.C. § 255.  "The Federal Circuit has, moreover, suggested
that some lenity in this arena may be appropriate when a failure
is only technical in nature and the public has received
sufficient notice of a patent claim."  *Carotek,* 875 F. Supp. 2d
at 335.  "If the correction were not effective for its intended

-29-

purpose, we could discern no other reason the PTO would have granted the Certificate." *Id.*

In this case, when the '288 patent issued without the '416 patent application priority information on the title page, Prism moved quickly to file its 2007 Request for Certificate of Correction under § 254, claiming that the mistake was that of the USPTO. Without explicitly addressing the question of who was at fault, the USPTO issued the 2009 Certificate of Correction with the requested priority information. Defendants emphasize the difference between §§ 254 and 255 and claim that § 255 requires a "higher showing" from a patent holder in order to obtain a certificate (Filing No. 88, at 36). Defendants claim that the requirements of neither § 254 nor § 255 are satisfied in this case, such that the 2009 Certificate of Correction is invalid whether issued pursuant to either statute (Filing No. 88, at 37).

The Court disagrees. After the continuity information was printed in the 2003 Patent Application Publication, Prism rightly "expected that the PTO would capture the information and place it on the title page of its patent." *E.I. du Pont*, 525 F.3d at 1361. The Court sees no reason to back away from the presumption of the USPTO's "[r]egularity of routine administrative procedures" regarding the issuance of the 2009 Certificate of Correction, and the Court will not "intervene in the day-to-day operations of an administrative agency, especially

-30-

when the agency practice is in straightforward implementation of the statute."  *Hyatt*, 146 F.3d at 1355-56.

The Court does agree with defendants that the nearly two-year time lag between the issuance of the '288 patent and the 2009 Certificate of Correction is troubling from the point of view of notice to other inventors.  *See Sampson*, 463 F.2d at 1045.  Yet the Court is aware that Prism moved diligently to request the Certificate of Correction soon after the issuance of the '288 patent.  In addition, defendants have not suggested that the delay was due to any action or inaction by Prism.  While notice to the public of the claimed continuation was less effective before the 2009 Certificate of Correction issued, the 2003 Patent Application Publication did show the specific reference to the '416 patent application on the title page, giving notice, however imperfect, to interested parties, even after the issuance of the '288 patent.

The Court agrees with defendants that the 2009 Certificate of Correction, issued after the application had matured into the '288 patent itself, could not serve to comply with § 120 in the first instance, since § 120 dictates requirements for a patent application, not a patent.  But the Court defers to the expertise of USPTO Examiner Heneghan as he stated, on two occasions, that pursuant to the 2009 Certificate of Correction, the '288 patent "is deemed to enjoy the claimed

priority as an operation of law" (April 2010 Notice of Intent;
*see also* July 2010 Order).  Indeed, Examiner Heneghan initially
made the same observations argued by defendants regarding
noncompliance with Rule 78 and MPEP § 201.11 in the March 2010
Office Action.  Yet later, he declared those statements to be
"inapt" in light of the issuance of the 2009 Certificate of
Correction.

Finally, the Court notes that during the Second
Reexamination, the challenging party's request contained a
"Detailed Analysis of Prism's Claim to Earlier Filing Date,"
which included many of the same arguments made by defendants in
this case regarding non-compliance with Rule 78.  Thus these
issues were squarely before Examiner Heneghan when he issued the
July 2010 Order again acknowledging the '288 patent's claim of
priority.

In consideration of the deference owed to the USPTO and
the allowable discretion of the Director under Rule 183, the
Court finds that the decision by the USPTO to include the '416
patent continuity information with the '288 patent shall not be
disturbed.  The Court finds that the USPTO considered the issue
on several different occasions, in different contexts, and that
the USPTO continues to maintain that the '288 patent application
made a "specific reference" to the '416 patent application
pursuant to § 120.  "In light of these considerations and simple

notions of fairness," the Court will defer to the USPTO's determination of this matter.  *Carotek*, 875 F. Supp. 2d at 335.

**4.  Co-pendency of the '345 Patent and the '288 Patent.**[6]  In order for the '345 patent to claim priority to the '416 patent through the '288 patent, § 120 requires that the '345 patent application must have been "filed before the patenting or abandonment of or termination of proceedings" on the '288 patent application.  The '288 patent issued, and so its application terminated, on October 30, 2007.  The '345 patent application was also filed on October 30, 2007.  Thus the issue presents itself: were the two applications co-pending at some point on October 30, 2007?  Defendants, making various observations about statutory construction, argue that they were not.

The Federal Circuit has not squarely addressed this issue:  "We therefore leave for another day whether filing a continuation on the day the parent issues results in applications that are co-pending as required by [§ 120]."  *Encyclopaedia Britannica, Inc. v. Alpine Electronics of Am., Inc.*, 609 F.3d

---

[6] As noted above, T-Mobile USA, Inc., does not join in this argument.

1345, 1352 (Fed. Cir. 2010).[7]  But a Wisconsin District Court had occasion to study the issue where, as here, "In defendant's view of the law, a same day filing of a new application is not an application 'filed before the patenting' of its parent application."  *MOAEC, Inc. v. MusicIP Corp.*, 568 F. Supp. 2d 978, 981 (W.D. Wis. 2008).

*MOAEC*'s plaintiff, like Prism here, "disputes defendant's view of the law, citing the [USPTO's] interpretation of the copendency requirement in [the MPEP]."  *Id.*  "That manual states in pertinent part:  'If the prior application issues as a patent, it is sufficient for the later-filed application to be copending with it if the later-filed application is filed on the same date, or before the date that the patent issues on the prior application."  *Id.* (citing MPEP, § 201.11(II)(B) (8th ed. 2006)).

---

[7] Yet a learned patent treatise notes, "The modern requirement of co-pendency can be reliably understood as requiring the prosecution of the continuation application to overlap for a time with that of the parent. . . .  At the same time, the period of co-pendency can be exceedingly small - it is commonplace, for example, for applicants to expressly abandon the original application via the same letter that transmits the papers of the continuation application for filing."  1 Moy's Walker on Patents § 3:49 (4th ed.) (footnotes omitted).  *See also Godfrey v. Eames*, 68 U.S. 317, 325-26 (1863) ("In our judgment, if a party choose to withdraw his application for a patent, and pay the forfeit, intending at the time of such withdrawal to file a new petition, and he accordingly do so, the two petitions are to be considered as parts of the same transaction, and both as constituting one continuous application, within the meaning of the law.").

The Wisconsin court continues,

> In determining that the copendency
> requirement can be satisfied if the
> later-filed patent application is
> filed on the same day the patent
> issues on the parent application,
> the PTO relies on its own
> interpretation of 'before' in
> § 120.  According to the PTO,
> "'[b]efore' has consistently been
> interpreted, in [§ 120] to mean
> 'not later than.'" *MPEP*,
> § 711.02(c) . . .  In light of the
> statute's silence on this issue,
> the history of reliance on
> interpretations in [MPEP] and the
> PTO's specialized experience
> regarding patenting procedure, it
> is both logical and prudent to give
> deference to the PTO's
> interpretation of the copendency
> requirement, so long as it is not
> inconsistent with the statute
> . . . .
>
> The PTO's interpretation is
> consistent with the statute.  The
> PTO has responded to the statute's
> silence on what constitutes filing
> "before" patenting by choosing not
> to limit "before" to a specific
> period of time.  Instead of having
> to split hairs by trying to
> determine the exact second of
> filing and issuance, the PTO chose
> to interpret "before" to mean "not
> later than."  Therefore, regardless
> whether a later-filed application
> is actually filed a second before a
> patent is issued on its parent
> application, if it is filed on the
> same day, the application and the
> issued patent are copending for the
> purpose of § 120. . . .
>
> In *Godfrey*, the Supreme Court
> addressed the continuing

> application practice and held that
> when a patent application was
> withdrawn and a new application
> regarding the same invention was
> filed the same day, the
> applications together constituted
> "one continuous application."
> Such reasoning supports the
> conclusion that the § 120
> copendency requirement's underlying
> purpose of permitting "one
> continuous application" is not
> frustrated by permitting a
> later-filed application to be filed
> on the same date that a patent
> issues on its parent application.

*MOAEC*, 568 F. Supp. 2d at 981, 982 (quoting *Godfrey*, 68 U.S. at 325-26).  The Court agrees with the reasoning of the Wisconsin court.  Consequently, the Court finds that the '345 patent application satisfies the § 120 requirement that it co-pend with the '288 patent application.

        **B.  Defendants' Motions.**  First, defendants move the Court to confirm that the patents-in-suit "are not entitled to claim priority to the filing date of [the '416 patent]" (Filing No. 87, at 1).  For the reasons stated above, that motion will be denied.

        Second, defendants move the Court to "grant[] summary judgment that the patents-in-suit are invalid and, therefore, [that each] Defendant is entitled to judgment as a matter of law" (*Id.*).  Defendants state, "If the Court determines that the patents-in-suit are not entitled to the June 11, 1997 priority date, then all three patents are invalid" (Filing No. 88, at 44).

-36-

Because the Court has not found that the patents-in-suit are not entitled to the '416 patent priority date, the Court does not reach defendants' invalidity argument.  Accordingly,

IT IS ORDERED:

1) Prism's motions for summary judgment (Filing No. 77 in 8:12CV122; Filing No. 75 in 8:12CV123; Filing No. 77 in 8:12CV124; Filing No. 74 in 8:12CV125; and Filing No. 79 in 8:12CV126) are granted in part, to the extent that the patent applications of the asserted patents, the '288 patent, the '345 patent, and the '155 patent, are deemed to have properly claimed priority to the '416 patent application from a procedural standpoint.

2) The Court expressly declines to rule on the issue of whether the disclosure of the '416 patent application provides support for the claims of the asserted patents pursuant to 35 U.S.C. §§ 112 and 120.

3) Defendants' motions for summary judgment, AT&T Mobility LLC (Filing No. 87 in 8:12CV122), Sprint Spectrum L.P. (Filing No. 86 in 8:12CV123), T-Mobile USA, Inc. (Filing No. 88 in 8:12CV124), United States Cellular Corporation (Filing No. 84

in 8:12CV125), and Cellco Partnership d/b/a Verizon Wireless
(Filing No. 87 in 8:12CV126) are denied.

      DATED this 20th day of May, 2013.

           BY THE COURT:

           /s/ Lyle E. Strom

           _____
           LYLE E. STROM, Senior Judge
           United States District Court