IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| PRISM TECHNOLOGIES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | 8:12CV122 |
| | ) | |
| v. | ) | |
| | ) | |
| AT&T MOBILITY, LLC, | ) | MEMORANDUM AND ORDER |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| PRISM TECHNOLOGIES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | 8:12CV123 |
| | ) | |
| v. | ) | |
| | ) | |
| SPRINT SPECTRUM L.P., | ) | |
| d/b/a SPRINT PCS, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| PRISM TECHNOLOGIES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | 8:12CV124 |
| | ) | |
| v. | ) | |
| | ) | |
| T-MOBILE USA, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| PRISM TECHNOLOGIES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | 8:12CV125 |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES CELLULAR | ) | |
| CORPORATION, d/b/a U.S. | ) | |
| CELLULAR, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

```
PRISM TECHNOLOGIES LLC,        )
                               )
           Plaintiff,          )        8:12CV126
                               )
     v.                        )
                               )
CELLCO PARTNERSHIP d/b/a       )
VERIZON WIRELESS,              )
                               )
           Defendant.          )
_____)
```

This matter is before the Court on the common *Daubert* motion (Filing No. 261 in 8:12CV122; Filing No. 221 in 8:12CV123; Filing No. 234 in 8:12CV124; Filing No. 214 in 8:12CV125; Filing No. 204 in 8:12CV126)[1] of the five defendants in five separate cases. Pursuant to Section 299 of Title 35, plaintiff Prism Technologies, L.L.C. ("Prism") opted to file separate actions against common alleged infringers of its patents (35 U.S.C. § 299(a), (b); Filing No. 135). In the interest of judicial economy, the parties agreed to allow the filing of "common motions for summary judgment" and "common *Daubert* motions" by the defendants, AT&T Mobility L.L.C., Sprint Spectrum L.P., T-Mobile U.S.A., Inc., United States Cellular Corporation d/b/a U.S. Cellular, and Cellco Partnership d/b/a Verizon Wireless (referred to heretofore as the "defendants") (Filing No. 226). The

---

[1] For ease of citation, the Court will cite to the filings in the AT&T Mobility L.L.C. case (8:12CV122).

defendants filed the current common *Daubert* motion to exclude the opinions and testimony of James E. Malackowski ("Malackowski"). A case-specific *Daubert* motion (Filing No. 266) against Malackowski was also filed by AT&T. The matter has been fully briefed and is ready for disposition (Filing No. 264, Filing No. 337, Filing No. 368). After review of the motion, briefs, indices of evidence, oral arguments, and relevant case law, the Court rules as follows.

**I.    BACKGROUND**

A.    PROCEDURE

Originally, Prism alleged infringement of three asserted patents (Filing No. 1). Ultimately, Prism narrowed the scope of this action to two patents: U.S. Patent No. 8,127,345 ("Patent '345") and U.S. Patent No. 8,387,155 ("Patent '155") (Filing No. 1; Filing No. 242, 9; Filing No. 243-4, 3; Filing No. 243-5, 2). Prism dropped its third asserted patent, U.S. Patent 7,290,288 ("Patent '288"), from this action (*Id.*).

The United States Patent and Trademark Office ("PTO") issued Patent '345, entitled "METHOD AND SYSTEM FOR MANAGING ACCESS TO PROTECTED COMPUTER RESOURCES VIA AN INTERNET PROTOCOL NETWORK", on February 28, 2012, from an application filed October 30, 2007 (Filing No. 1-6, at 1). Patent'345 is allegedly a continuation of Patent '288, entitled "METHOD AND SYSTEM FOR

CONTROLLING ACCESS, BY AN AUTHENTICATION SERVER, TO PROTECTED COMPUTER RESOURCES PROVIDED VIA AN INTERNET PROTOCOL NETWORK" and filed on August 29, 2002 (*Id.*).

The PTO issued Patent '155, entitled "SYSTEM FOR MANAGING ACCESS TO PROTECTED COMPUTER RESOURCES", on February 26, 2013, from an application filed November 11, 2010, with the PTO. Prism contends that the Patent '155 application was a continuation of the Patent '345 application.

Prism has a fourth, unasserted patent, U.S. Patent No. 6,516,416 ("'416 Patent"), entitled "SUBSCRIPTION ACCESS SYSTEM FOR USE WITH AN UNTRUSTED NETWORK". The Court has referenced this patent in its prior orders (*E.g.*, Filing No. 132).

On April 4, 2012, Prism filed its complaints against AT&T and various other cellular phone providers in separate actions, alleging direct infringement, indirect contributory infringement, and indirect inducement of infringement of Patents '345 and '155 (Filing No. 1, 85). The complaint was amended September 21, 2012 (Filing No. 40) and March 1, 2013 (Filing No. 85). On April 23, 2013, the parties submitted a Joint Claim Construction Statement and the Court conducted a *Markman* hearing on July 2, 2013 (Filing Nos. 110, 130). The Court issued its *Markman* order on July 30, 2013, accepting jointly stipulated terms and construing disputed terms (Filing No. 132).

Prism has retained experts to testify and offer testimony and opinions at trial regarding damages and the systems in this case. The parties submitted their briefs and a *Daubert* hearing was held August 27, 2014. Mr. Malackowski will offer expert damage testimony at trial. Specifically, Mr. Malackowski has created a "reasonable royalty amount" for the defendant's purported infringement based upon a royalty rate and a royalty base (Filing No. 337, at 7). The defendants move to exclude such testimony in its entirety (Filing No. 264, at 34).

B.  MALACKOWSKI'S MODEL

Mr. Malackowski calculated the royalties against each defendant from February 28, 2012 until December 31, 2013, subject only to the defendants producing information for 2014. Filing No. 337, at 11 n.3. Mr. Malackowski's model is based upon a hypothetical negotiation between Prism and each defendant. *Id.* at 11.

Mr. Malackowski's model has multiple stages. First, he attempted to isolate the "economic footprint" of the invention in each defendant's revenues to create a royalty base in a three-step calculation. First, he identified each defendant's data services revenue. Second, he reduced the revenue of RIM subscribers per Prism's RIM agreement. Third, he "apportioned"

these revenues by each defendant's cost savings fraction.  The third step is pivotal to this motion.

The cost-savings fraction is a separate, two-step, calculation.  Mr. Malackowski identified the numerator of this fraction as the cost savings value of the asserted patents (Filing No. 265-3, at 43-46).[2]  Then, Mr. Malackowski identified the denominator as the total network costs for each defendant (*Id.*).  The resulting fraction represented the "benefit cost savings" of the infringing system.  Therefore, the royalty base equation is as follows:

[(data revenue - RIM revenue) x (cost savings/network costs)]

AT&T characterizes the left-side of the equation as the "revenue calculation" and the right-side as the "cost-savings calculation."  Mr. Malackowski concluded, for each defendant, that the products of these calculations were the royalty bases.

Next, Mr. Malackowski considered the *Georgia-Pacific* factors to create a royalty rate of 2-4% for each defendant (*Id.* at 46-86).  The product of the royalty base and the royalty-rate

---

[2] The cost savings are the difference between the assumed costs of owning all backhaul infrastructure and the cost to lease the backhaul for each defendant.  Filing No. 264, at 10.  The backhaul is a physical infrastructure which the defendant does not own but rather leases from third parties under strict contractual terms.

constituted the total reasonable royalty per defendant (*Id.* at 87).

II. STANDARD OF REVIEW

The Court must determine whether Mr. Malackowski's specialized knowledge will assist the trier of fact to understand evidence or to determine a fact in issue. Fed. R. Evid. 702. Under Rule 702, the Court must consider whether (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Royalty damage calculations are governed by case law:

> Upon a showing of infringement, a patentee is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284. A "reasonable royalty" derives from a hypothetical negotiation between the patentee and the infringer when the infringement began. *See, e.g.*, *Unisplay, S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 517 (Fed. Cir. 1995). A comprehensive (but unprioritized and often overlapping) list of relevant factors for a reasonable royalty calculation appears in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

> Thus, the trial court must carefully tie proof of damages to the claimed invention's footprint in the market place. *See, e.g., Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999) ("To prevent the hypothetical from lapsing into pure speculation, this court requires sound economic proof of the nature of the market and likely outcomes with infringement factored out of the economic picture."); *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1312 (Fed. Cir. 2002) ("[T]he market would pay [the patentee] only for his product . . . . [The patentee's damages] model [does not support the award because it] does not associate [the] proposed royalty with the value of the patented method at all, but with the unrelated cost of the entire Spirit platform."). Any evidence unrelated to the claimed invention does not support compensation for infringement but punishes beyond the reach of the statute.

*ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 568-69 (Fed. Cir. 2010). When the patented invention does not drive demand for the entire accused product, "it is generally required that royalties be based not on the entire product, but instead on the 'smallest saleable patent-practicing unit ["SSPPU"].'" *LaserDynamics*, *Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (citing *Cornell Univ. v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279, 283, 287-88 (N.D.N.Y. 2009)). "A damages theory must be based on 'sound

economic and factual predicates.'" *LaserDynamics, Inc.*, 694 F.3d at 67 (citing *Riles v. Shell Exploration & Pro. Co.,* 298 F.3d 1302, 1311 (Fed. Cir. 2002)).

The proponent of the expert testimony must prove its admissibility by a preponderance of the evidence. *Daubert*, 509 U.S. at 592-93, n.10. "[T]estimony is inadmissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006). "When the analytical gap between the data and proffered opinion is too great, the opinion must be excluded." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

### III. DISCUSSION

The defendants summarized their position into three objections at oral arguments. First, defendants argue a revenue-based royalty model is inappropriate as a matter of law because "customer demand for the patented invention" does not generate data plan revenues (Defendants' Slide No. 5). Second, defendants object to Mr. Malackowski's application of "cost-savings" to apportion revenues (Defendants' Slide No. 21). Third, the defendants claim that Mr. Malackowski's methodology is a "black box" which cannot be correlated to the invention's economic footprint (Defendants' Slide No. 26).

A.   CONSUMER DEMAND

The Federal Circuit has held "the entire market value rule permits recovery of damages based on the value of a patentee's entire apparatus containing several features when the patent-related feature is the 'basis for customer demand.'" *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1549 (Fed. Cir. 1995), *cert. denied*, 516 U.S. 867 (1995) (quoting *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989)).

> As the Federal Circuit recently noted, "[w]here small elements of multi-component products are accused of infringement, calculating a royalty on the entire product carries a considerable risk that the patentee will be improperly compensated for non-infringing components of that product." Thus, the general rule is that royalties will be based on the "'smallest salable patent- practicing unit.'"

*AVM Techs., L.L.C. v. Intel Corp.*, Civ. Action No. 10-610, 2013 WL 126233, *2 (D. Del. January 4, 2013) (citing and quoting *LaserDynamics v. Quanta Comp., Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012)). If the patentee cannot satisfy the entire market value rule, it must "in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative." *Id.* (quoting *Uniloc*, 632 F.3d at 1318).

In *Laserdynamics*, the patentee held a patent for an optical disc drive ("ODD") compatible for laptops. The patentee attempted to create a royalty base from the entire revenue of the laptops. *LaserDynamics*, 694 F.3d at 68 ("the royalty was expressly calculated as a percentage of the entire market value of a laptop computer rather than a patent-practicing ODD alone. This, by definition, is an application of the entire market value rule."). The court in that case found that the patentee failed to offer sufficient evidence to show the allegedly infringed patent drove demand for the laptop and therefore, the entire market model in that case was impermissible.

Like *Laserdynamics*, the defendants argue Malackowski's model is an entire market model, and because he failed to offer sufficient proof that the alleged patent drives the sales of services, Malackowski's model is impermissible. Prism argues Malackowski's damage model does not contemplate "the entire market value of the accused device"; instead, he attempts to reach the "smallest saleable patent-practicing unit" ("SSPPU"). The entire market value rule would come into effect in this case only if Malackowski used the total data revenue sales of each provider. Because Malackowski attempts to "apportion" revenues, the entire market value rule is not in play and the defendants' motion on this basis is denied.

-11-

**B.     COST-SAVINGS CORRELATED TO REVENUE**

There are two issues before the Court. First, revenue-generation and cost-savings are undisputedly proper methods for calculating royalty bases. In this case, Malackowski has created a hybrid of the two forms. The issue is whether such a model is methodically sound.[3]

Second, case law requires a patentee to apportion the damages between the patented feature and the unpatented features, and such apportionment must be reliable and tangible. The issue before the Court is whether Malackowski's evidence sufficiently correlates the patents-in-suit to his model. What effect, if any, does the cost-savings of the alleged infringement have on revenue?

1. CROSSING METHODS

Malackowski's model took the product of the "revenue calculation" and the "cost-savings calculation" -- the third step in Malackowski's model:

[(data revenue - RIM revenue) **x** (cost savings/network costs)]

Methodologically, this is a unique and largely untested method of calculating damages. Prism points to only two, unreported

---

[3] The Court stresses the issue is not whether cost-savings is appropriate, despite arguments to the contrary.

instances patent damages where calculated in such a fashion. Both damage opinions where calculated by Malackowski.

In the case of *In re Nortel Networks Inc.* ("*Nortel*"), Prism offers six pages of trial transcript testimony. Filing No. 338-2, at 3-8 (citing *In re Nortel Networks Inc.*, Case No. 09-10138 (Bankr. D. Del. May 30, 2014)). In that transcript, Malackowski explained he used "cost approach for allocation" and not for valuation. *Id.* at 6. Malackowski appeared to calculate the value of patents in the research and development department ("patent portfolio") of the bankrupt entity. *Id.* These six pages show very little to support Malackowski's model in this case. A thorough reading does not illustrate Malackowski's methodology or whether it was sound. Prism does not tie the *Nortel* bankruptcy case into the this patent case. *See* Filing No. 337, at 38. Therefore, the Court gives little weight to the precedential value of the *Nortel* bankruptcy case.

In *Tekmira Pharmaceuticals Corp. v. Alnylam Pharmaceuticals, Inc.*, Malackowski also performed a "cost-based apportionment metric." Filing No. 337, at 38; Filing No. 337-6 (citing *Tekmira Pharmaceuticals Corp. v. Alnylam Pharmaceuticals, Inc.*, Civ. A. No. 11-1010-BLS2, (Mass. Bus. Lit. Super. Ct. Oct. 22, 2012)). The Massachusetts court analyzed Malackowski's opinion under the *Daubert* and *Commonwealth v. Lanigan*, 419 Mass.

-13-

15 (1994) models and found the Court did not need to apply its gate-keeping function. However, the court did not analyze the model Malackowski will offer at trial, the cost-savings/revenue model, that appears before the Court in this case. In fact, it appears as though Malackowski did not apply revenues into his calculations in the *Tekmira* case. Filing No. 337-6, at 6. Therefore, the Court gives little weight to the precedential value of the *Tekmira* case.

  The Court agrees with the defendants that Malackowski's methodology and model has never before been attempted. Prism argues that Malackowski has performed hundreds of "damages analyses over the past 20 years." Filing 337, at 38 n.33. Prism then qualifies that assertion by stating legal requirements have recently changed and Malackowski has a "limited number of matters (about a dozen or so) and most of those matters did not focus on cost savings to the accused infringer as the primary benefit." *Id.* Prism cannot point to any precedent where merging cost-savings and revenues passes the strictures of *Daubert*. The lack of precedent from the Federal Circuit compounds the mthodological issues in Malackowski's model.

  Cost savings or revenue are a permissible form of calculating patent damages. However, the Court can find no case law to support Prism's claim that the product of revenue as a

-14-

fraction of cost savings is permissible, let alone logical. Malackowski's model is the first of its kind in patent cases. In addition, no evidence has been adduced to correlate a revenue to cost-savings calculation.

2.  CORRELATING REVENUE TO COST-SAVINGS

Malackowski fails to correlate revenue to cost-savings because his reasoning is conclusory and his model includes elements of the network which do not infringe on Prism's asserted patents.

First, Malackowski's reasoning is conclusory. In Prism's own words:

> Indeed, the . . . primary benefits of the Asserted Patents are enjoyed by Defendants in the form of cost savings from using an untrusted network as opposed to the non-infringing alternatives, such as building a dedicated trusted network at much greater expense. As a result, Mr. Malackowski used a cost based approach to quantify the value of the patented technology to each Defendant, reflected as portions of each Defendants' data service revenues.

Filing No. 337, at 10. Malackowski's model is much like these two sentences -- there is no continuity to complete the syllogistic reasoning. The first sentence is true. To apportion revenues, Malackowski focused on one of the primary contributions

-15-

and benefits of the claimed inventions -- "the cost savings realized by [each Defendant] through the use of an untrusted network, as provided for by the Asserted Patents." Filing No. 337, at 6. Cost savings analysis could represent the difference between what each defendant spends in network leasing and the cost of building its own backhaul. Filing No. 337, at 24-25.

The second sentence, however, is completely conclusory. It does not explain why, if cost-savings is an appropriate measure of damages, Malackowski then took that figure, used it as a numerator, and multiplied the resulting fraction against the defendants' revenues. There is no minor premise to link the major premise to Malackowski's conclusion. Prism simply argues cost-savings is appropriate. Filing No. 337, at 24-28. It cannot be overstated that cost-savings analysis should not include the revenue figure as a matter of course.

Second, Prism argues the infringed invention causes the defendants to generate revenues by its very nature. Prism cites some defendants' recent rate hikes based upon network-improvement costs. The increase in rates did not specifically correlate to the infringing system, but the unapportioned network. Because damages must be apportioned to the alleged infringing invention, the sweeping and categorical use of "network improvements" to prove a correlation between revenues and the cost-savings of the

-16-

invention is prohibited. The rate hikes of some defendants due to "network improvements" is insufficient to prove a relationship between revenues and the invention.

Malackowski offers no logical underpinning to link his cost-saving calculation to the defendants' revenue calculation. Malackowski's apportionment fails to apportion revenue to the defendants' network features infringing Prism's patents and to determine the revenue attributable to the defendants' use of the invention. Malackowski's model is over broad and beyond the context of the invention. His apportionment is methodically flawed. After review of the expert materials, case law, and the parties' submissions, the Court finds Malackowski's model unsound and will grant the defendants' motion to exclude his testimony and opinion in its entirety.

**C.   BLACK BOX**

In *Uniloc*, plaintiff's damages expert began his analysis by utilizing the "25% rule of thumb," which assumed that "25% of the value of the product would go to the patent owner and the other 75% would remain with [the infringer.]" *Uniloc*, 632 F. 3d at 1311. The expert then applied the *Georgia-Pacific* factors, adjusting the 25% baseline upwards or downwards in accordance with his analysis. *Id.* The Federal Circuit rejected this approach and eliminated further use of the 25% rule "because it

fails to tie a reasonable royalty base to the facts of the case at issue." *Uniloc*, 632 F. 3d at 1315.

Prism argues Malackowski's royalty rate is *de minimis*, small, "only between 8% and 12% of a Defendant's data service revenues." Filing No. 337, at 8, 11-12, 14-15. The Court does not consider the relative size of Malackowski's rate. The Court considers whether that rate complies with relevant case law.

To the extent that Malackowski rejected previous licenses as a starting-point to acquire a royalty rate, the Court defers to Malackowski's judgment and will deny the defendants' motion. The situation in this case is distinguishable from *Laserdynamics* wherein the expert chose a settlement license specifically for its unreasonably high rate in lieu of more reasonable alternatives. Here, Malackowski disregarded all settlements regardless of favoritism. The defendants' objection is merely a disagreement between the parties' experts.

Furthermore, the Court finds nothing in the *Uniloc* decision to require Malackowski to articulate a starting point before calculating a reasonable royalty rate.

IT IS ORDERED:

1) The defendants' motions (Filing No. 261 in 8:12CV122; Filing No. 221 in 8:12CV123; Filing No. 234 in

8:12CV124; Filing No. 214 in 8:12CV125; Filing No. 204 in 8:12CV126)) are granted.

2) Mr. Malackowski is prohibited from offering his opinion and testimony at trial in its entirety.

3) In light of this order, the Court dismisses AT&T's case-specific motion (Filing No. 266) against Mr. Malackowski.

DATED this 22nd day of September, 2014.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court